The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceeding before Deputy Commissioner Amy L. Pfeiffer and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the holding of the Deputy Commissioner and enters the following Opinion and Award.
 *********** EVIDENTIARY RULINGS
Before the Full Commission, plaintiff contends that certain medical records which were stipulated into evidence by the parties were not made part of the record and have not been attached to the hearing transcript. On this issue, defendants concur that some of plaintiffs stipulated medical records were in fact omitted from the transcripts exhibits. Accordingly, the Full Commission Orders that such medical records, which were attached to plaintiffs brief, be ADMITTED into the evidence of record and attached as exhibits to the transcript.
Additionally, plaintiff contends that certain Industrial Commission Forms were stipulated to by the parties, but were erroneously not admitted into the record. On this issue, defendants oppose the inclusion of these forms into evidence. Having reviewed the transcript and the parties Pre-Trial Agreement, the Full Commission finds that no such forms were ever actually introduced by either party or admitted into evidence. Accordingly, plaintiffs motion in this regard is DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 21 July 1999 as:
 STIPULATIONS
1. The date of the alleged the alleged injury by accident which is the subject of this claim is 27 December 1998.
2. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
3. An employment relationship existed between plaintiff and defendant-employer, and defendant-employer was insured for workers compensation purposes by Travelers Property Casualty Company.
4. Plaintiffs average weekly wage for the purposes of this action is $300.00, yielding a compensation rate of $200.00, pending confirmation by a Form 22 wage chart.
5. The parties stipulated all of plaintiffs treatment records into the evidence in this matter, along with the deposition transcript of Dr. McBride. Defendants introduced and the undersigned admitted a videotape and plaintiffs recorded statement into the evidence in this matter.
6. The issues to be determined are whether plaintiff sustained a compensable injury by accident or contracted a compensable occupational disease on or about 27 December 1998, and if so, to what benefits is he entitled.
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 21 July 1999, the date of the hearing before the Deputy Commissioner, plaintiff was thirty-nine (39) years old with an eleventh grade education.
2. Defendant-employer operates an automobile service business and first employed plaintiff in 1993 as an "installer for a period of nine (9) months.
3. As an installer, plaintiffs job required him to change batteries, change oil in cars and trucks as well as changing tires. His duties required plaintiff to lift and carry tires and tools and to keep the bay area clean and organized. Additionally, as an installer, plaintiffs duties required him to use numerous hand tools, including air wrenches and air guns, crowbars and jacks.
4. Plaintiff returned to his position with defendant-employer in approximately May 1995 and continued working in his capacity as an installer through 13 September 1997.
5. On 13 September 1997, plaintiff sustained a torn left biceps tendon as a result of an incident where he attempted to move a lawnmower at home. Later that same day, he aggravated the injury while playing with his daughter. Prior to these incidents, plaintiffs left arm had been asymptomatic. Plaintiff was treated for this injury by Dr. Robert B. McBride, Jr., an orthopaedic surgeon, who diagnosed plaintiffs condition as a torn biceps tendon. On 10 November 1997, Dr. McBride performed surgery to repair the torn biceps tendon in plaintiffs left arm.
6. On 10 March 1998, plaintiff was released to return to light duty work by Dr. McBride with a twenty (20) pound lifting restriction. These restrictions were to remain in place for the next four to six (4-6) weeks. After working for reduced wages at McDonalds four (4) months beginning on 24 April 1998, plaintiff returned to work for defendant-employer in July 1998.
7. On 27 December 1998, while lifting a tire at work, plaintiff tore the biceps tendon in his right arm. Prior to this incident, plaintiffs right arm had been asymptomatic.
8. Following his injury, plaintiff was examined by Dr. Brian A. Howard who found that plaintiff had sustained a full tear of the biceps tendon and that this tear was associated with tendonitis and irregularity of the biceps tendon.
9. On 25 January 1999, Dr. McBride again performed surgery on plaintiff, this time to repair plaintiffs right biceps tendon. Dr. McBride released plaintiff to light duty, left handed only work on 30 March 1999. However, work suitable to these restrictions was not made available to plaintiff by defendant-employer.
10. Following an exacerbation of plaintiffs symptoms on during physical therapy, Dr. McBride further restricted plaintiff to lifting no more than ten (10) pounds. Plaintiffs restrictions were further revised on 18 May 1999 when Dr. McBride raised the lifting restriction to a maximum of twelve (12) pounds overhead and a maximum of ten (10) pounds to waist level. With these revised restrictions, suitable work was still not offered or otherwise made available to plaintiff by defendant-employer.
11. On 6 July 1999, Dr. McBride again modified plaintiffs work restrictions regarding his right arm in that he was to lift no more than ten (10) pounds with his right arm and was to limit his use of the computer to four (4) hours per day.
12. Defendant-employer did not offer or otherwise make available suitable work to plaintiff from 6 July 1999 through 31 August 1999, when Dr. McBride released plaintiff to return to his regular duties without restrictions.
13. Dr. McBride diagnosed plaintiff as having "tendinosis, or an irregularity of the tendon, in both his left and right biceps tendons. Dr. McBride opined that this condition was consistent with repetitive motion or trauma rather than a sudden event.
14. Dr. McBride viewed the videotape of plaintiffs duties. After viewing plaintiffs duties, Dr. McBride opined that plaintiffs tendinosis condition was consistent with the repetitive motion or trauma activities depicted on the tape. Furthermore, Dr. McBride opined plaintiffs job with defendant-employer caused that condition and the ultimate rupture or tearing of plaintiffs biceps tendons.
15. In his deposition, Dr. McBride testified that tendinosis is an uncommon condition in the general public and not one seen frequently by physicians. Dr. McBride further testified that he has seen this condition in athletes and in professions such as lawn maintenance where a workers duties required a similar type of repetitive motion or trauma as plaintiffs duties required him to perform.
16. Plaintiffs employment with defendant-employer caused or significantly contributed to his tendinosis condition and the ultimate tearing of his left bicepss tendon on 13 September 1997 and of his right biceps tendon on 28 December 1998.
17. Plaintiffs employment with defendant-employer exposed him to an increased risk of developing tendinosis as compared to members of the general public. The ultimate tearing of his left biceps tendon on 13 September 1997 and of his right biceps tendon on 28 December 1998 were the direct and natural result of plaintiffs tendinosis.
18. At present, the evidence of record is insufficient upon which to enter a finding regarding the periods of temporary total or temporary partial disability plaintiff experienced as the result of his occupational disease and tendon tears. Also, there is insufficient evidence of record upon which to determine whether or not plaintiff was disabled following his being released to full duty on 31 August 1999. No rating has been assigned to either arm
19. Plaintiffs average weekly wage was $300.00, yielding a compensation rate of $200.00.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs average weekly wage on 27 December 1998 was $300.00, yielding a compensation rate of $200.00. G.S. 97-2(5).
2. Plaintiffs employment with defendant-employer caused or significantly contributed to his tendinosis condition and the ultimate rupture or tearing of his left bicepss tendon on 13 September 1997 and of his right biceps tendon on 28 December 1998. G.S. 97-53(13). Additionally, plaintiffs employment with defendant-employer exposed him to an increased risk, as compared to members of the general public, of developing tendinosis which lead to the ultimate tearing of his left biceps tendon on 13 September 1997 and of his right biceps tendon on 28 December 1998. Id.
3. As the result of his occupational disease and the causally related tearing of his left and right biceps tendon, plaintiff is entitled to have defendants pay for all related medical expenses incurred. G.S. 97-25; G.S. 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD and ORDER
1. Defendants shall pay for all related medical expenses incurred by plaintiff as the result of his occupational disease and the causally related tearing of his left and right biceps tendon.
2. It is hereby ORDERED that this matter is REMANDED to a Deputy Commissioner for an evidentiary hearing not inconsistent with this Opinion and Award. The issue at this hearing shall be the periods and types of disability compensation plaintiff may be entitled to as the result of his occupational disease and causally related bilateral biceps tendon tears.
3. Defendants shall pay the costs.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/___________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/__________________ LAURA K. MAVRETIC COMMISSIONER